Filed 3/19/15  P. v. Zepeda CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040604 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1243253) |
| v. | |
| ALFREDO MENDOZA ZEPEDA, | |
| Defendant and Appellant. | |

## I.     INTRODUCTION

After his motion to suppress evidence was denied, defendant Alfredo Mendoza Zepeda pleaded no contest to driving under the influence (DUI) with a blood alcohol level of 0.08 percent or higher within 10 years of a prior felony DUI conviction (Veh. Code, §§ 23152, subd. (b), 23550.5, subd. (a))[1] and driving with a license that was suspended or revoked for a prior DUI conviction within five years of a prior conviction of section 14601.5 (§ 14601.2, subd. (a)).  Defendant also admitted he had served a prior prison term (Pen. Code, § 667.5, subd. (b)).  At the sentencing hearing, the trial court struck the prior prison term allegation and placed defendant on probation for three years.

On appeal, defendant contends the trial court erred by failing to suppress the results of a warrantless, nonconsensual blood draw, which was conducted prior to the

_____

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

United States Supreme Court decision in *Missouri v. McNeely* (2013) 569 U.S. __ [133 S.Ct. 1552] (*McNeely*). Defendant also contends that we should modify a probation condition that provides, "You shall not possess or consume alcohol or illegal controlled substances" by including an express knowledge requirement.

We will modify the challenged probation and affirm the judgment as modified.

## II.     BACKGROUND

### A.     *Defendant's Arrest and Blood Draw*

At 12:40 a.m. on September 29, 2012, California Highway Patrol Officer Gustavo Ruvalcaba and his partner were on patrol in San Jose. They noticed a dark gray Ford pickup truck with a camper shell. The driver appeared to be having a difficult time parallel parking. After a few attempts, the truck drove down the street and went through a stop sign without making a complete stop.

The officers initiated a vehicle stop and found defendant was the driver. Officer Ruvalcaba noticed the smell of alcohol coming from defendant's truck. He also smelled alcohol on defendant's breath and person. Defendant had slow, slurred speech and very red, watery eyes. Defendant was asked for but did not provide a driver's license.

Defendant admitted he had consumed eight beers. He was unable to perform field sobriety tests. Officer Ruvalcaba arrested defendant and informed defendant that he was required to take a chemical test. Defendant initially agreed to take a chemical test, choosing a blood draw rather than a breath test, but when he arrived at the chemical testing area, he "changed his mind and refused."

Officer Ruvalcaba obtained his supervisor's approval for a forced blood draw. Defendant was placed on his knees and handcuffed with his arms apart. Three officers held him down while a technician drew his blood.[2]

_____

[2] Evidence at the preliminary hearing showed that defendant's blood alcohol level was 0.23 percent.

### B. Charges

Defendant was charged with driving under the influence of alcohol within 10 years of a prior felony DUI conviction (count 1; §§ 23152, subd. (a), 23550.5, subd. (a)), driving under the influence with a blood alcohol level of 0.08 percent or higher within 10 years of a prior felony DUI conviction (count 2; §§ 23152, subd. (b), 23550.5, subd. (a)), driving with a license that was suspended or revoked for a prior DUI conviction within five years of a prior conviction of section 14601.5 (count 3; § 14601.2, subd. (a)), and driving with a license that was suspended or revoked pursuant to section 13353.2 within five years of a prior conviction of section 14601.5 (count 4; § 14601.5, subd. (a)). As to counts 1 and 2, the information alleged that defendant had willfully refused to submit to a chemical test (§ 23577, subd. (a)) and that his blood alcohol level had been 0.15 percent or higher (§ 23578). The information further alleged that defendant had served a prior prison term. (Pen. Code, § 667.5, subd. (b).)

### C. Motion to Suppress

On September 11, 2013, defendant filed a motion to suppress evidence. (See Pen. Code, § 1538.5.) He alleged that he was detained and searched without a warrant, and that the prosecution was obligated to justify the warrantless detention and search. (See *People v. Williams* (1999) 20 Cal.4th 119, 130.)

The prosecution filed opposition to defendant's motion, arguing that the detention was justified by reasonable suspicion, that the detention was no longer than necessary, and that defendant's arrest was justified by probable cause.

In supplemental briefing, the prosecution argued that the exclusionary rule did not apply to defendant's blood draw. The prosecution noted that under the recent United States Supreme Court decision in *McNeely, supra,* 133 S.Ct. 1552, a warrantless blood draw has to be supported by exigent circumstances besides the evanescent nature of blood alcohol, but that prior to *McNeely,* California cases had held, based on *Schmerber v. California* (1966) 384 U.S. 757 (*Schmerber*), that the evanescent nature of blood

alcohol, alone, created an exigency. The prosecution further argued that under *Davis v. U.S.* (2011) 564 U.S. __ [131 S.Ct. 2419, 2423-2424] (*Davis*), the warrantless blood draw in this case had been performed "in objectively reasonable reliance on binding appellate precedent" and was therefore not subject to the exclusionary rule.

Defendant then filed a supplemental motion to suppress evidence. He argued there was no reasonable suspicion justifying the vehicle stop and that the forced blood draw violated the Fourth Amendment. He contended that the *McNeely* rule should be applied, because "*Schmerber* did not create a rule that blood could always be withdrawn without a warrant when an arrestee refuses." Defendant argued that California courts had previously misinterpreted *Schmerber*.

The trial court denied defendant's motion to suppress in a written order filed on October 22, 2013. The trial court found that defendant's initial detention was justified, that the officer was justified in prolonging the detention for a DUI investigation, and that defendant's arrest was supported by probable cause. The trial court further found that the warrantless blood draw was conducted in reasonable reliance on binding appellate precedent and that it was conducted in a reasonable manner.

### D.    *Pleas and Sentencing*

On October 29, 2013, defendant pleaded no contest to count 2 (driving under the influence with a blood alcohol level of 0.08 percent or higher within 10 years of a prior felony DUI conviction in violation of § 23152, subd. (b) and § 23550.5, subd. (a)) and count 3 (driving with a license that was suspended or revoked for a prior DUI conviction within five years of a prior conviction of § 14601.5 in violation of § 14601.2, subd. (a)).

At the sentencing hearing held on January 24, 2014, the trial court struck the prior prison term allegation and placed defendant on probation for three years, with 365-day county jail sentences for each of the two counts. One of defendant's probation conditions provided: "You shall not possess or consume alcohol or illegal controlled substances or knowingly go to places where alcohol is the primary item of sale."

4

### III. DISCUSSION

#### A. *Blood Draw*

Defendant contends the trial court erred by failing to suppress the results of the warrantless, nonconsensual blood draw.

In *Schmerber, supra,* 384 U.S. 757, the United States Supreme Court upheld a warrantless, nonconsensual blood draw following a DUI arrest. The court held that the Fourth Amendment's warrant requirement was excused because the arresting officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' " since "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." (*Id.* at p. 770.)

In *McNeely, supra,* 133 S.Ct. 1552, the United States Supreme Court revisited *Schmerber* and held that "the natural metabolization of alcohol in the bloodstream" does not present "a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." (*Id.* at p. 1556.) The *McNeely* court clarified that "consistent with general Fourth Amendment principles, . . . exigency in this context must be determined case by case based on the totality of the circumstances." (*Ibid.*)

In *Davis, supra,* 131 S.Ct. 2419, the United States Supreme Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule," even if that precedent is later overruled. (*Id.* at pp. 2423-2424.)

Several recent published California appellate decisions have upheld warrantless blood draws conducted prior to *McNeely,* despite the lack of exigent circumstances, based on the *Davis* rule. (*People v. Harris* (2015) 234 Cal.App.4th 671 (*Harris*); *People v. Jones* (2014) 231 Cal.App.4th 1257, 1265 (*Jones*); *People v. Rossetti* (2014) 230

5

Cal.App.4th 1070, 1076-1077 (*Rossetti*); *People v. Youn* (2014) 229 Cal.App.4th 571, 577 (*Youn*).) These cases explain that before *McNeely*, California cases had " 'uniformly interpreted *Schmerber* to mean that no exigency beyond the natural evanescence of intoxicants in the bloodstream, present in every DUI case, was needed to establish an exception to the warrant requirement. [Citations.]' [Citation.]" (*Harris, supra,* at p. 702; see also *Jones, supra,* at p. 1265; *Rossetti, supra,* at pp. 1074-1075; *Youn, supra,* at p. 577.) Thus, the pre-*McNeely* warrantless, nonconsensual blood draws were conducted in objectively reasonable reliance on California courts' interpretation of *Schmerber.* (*Harris, supra,* at p. 702; *Jones, supra,* at p. 1265; *Rossetti, supra,* at pp. 1076-1077; *Youn, supra,* at p. 577.)

Defendant contends that there was no California Supreme Court precedent specifically authorizing warrantless, nonconsensual blood draws. (See *Davis, supra,* 131 S.Ct. at p. 2429.) Defendant points out that during the *Davis* court's discussion of whether application of a good faith rule would "prevent judicial reconsideration of prior Fourth Amendment precedents," the court commented, "In most instances, as in this case, the precedent sought to be challenged will be a decision of a Federal Court of Appeals or State Supreme Court." (*Id*. at p. 2433.)

Contrary to defendant's claim, pre-*McNeely* decisions of both the California Supreme Court and California appellate courts had held that under *Schmerber*, the quick dissipation of alcohol provided a sufficient rationale for permitting a warrantless chemical test following a DUI arrest. For instance, in *People v. Superior Court (Hawkins)* (1972) 6 Cal.3d 757, the California Supreme Court stated: "It is clear that the Fourth Amendment does not bar a compulsory seizure, without a warrant, of a person's blood for the purposes of a blood alcohol test to determine intoxication, provided that the taking of the sample is done in a medically approved manner, is incident to a lawful arrest, and is based upon the reasonable belief that the person is intoxicated. [Citations.]" (*Id.* at p. 761.) The *Hawkins* court further stated, "*Schmerber* recognizes that once the

6

suspect is arrested, a seizure incident thereto may be properly conducted without a warrant, since the rapid dissipation of the alcohol would make the delay involved in obtaining a search warrant unnecessary and unjustifiable." (*Id.* at p. 765, fn. 7.) "After *Hawkins,* our Supreme Court and this state's intermediate appellate courts uniformly reiterated that a warrantless blood draw was justified under the Fourth Amendment if 'the arresting officer has reasonable cause to believe the arrestee is intoxicated . . .' with alcohol [citation], and those courts did not require any additional showing of exigency to excuse the lack of a warrant. [Citations.]" (*Harris, supra,* 234 Cal.App.4th at p. 702; see *People v. Sugarman* (2002) 96 Cal.App.4th 210, 214; *People v. Ford* (1992) 4 Cal.App.4th 32, 35.)

Defendant notes that in *People v. Thompson* (2006) 38 Cal.4th 811, a case cited by the trial court, the California Supreme Court did not categorically approve warrantless entries into the homes of DUI suspects, instead holding that exigent circumstances— including the natural dissipation of alcohol from the bloodstream—justified the warrantless entry in that particular case. (*Id.* at pp. 825-827.) As the *Rossetti* court pointed out, however, *Thompson* is "readily distinguishable," since it involved the question of whether the police could enter into a home without a warrant, and did not "call into question the unbroken line of pre-*McNeely* authority in California" relating to DUI arrests "taking place outside the home." (*Rossetti, supra,* 230 Cal.App.4th at p. 1077.)

We conclude that the pre-*McNeely* warrantless, nonconsensual blood draw in this case was conducted in objectively reasonable reliance on binding appellate precedent and that therefore, the trial court did not err by denying defendant's motion to suppress.

### B. *Probation Condition*

One of defendant's probation conditions provided: "You shall not possess or consume alcohol or illegal controlled substances or knowingly go to places where alcohol is the primary item of sale." Defendant contends that we should modify this condition by

including an express knowledge requirement. The Attorney General concedes that the condition should be modified. We will therefore modify the condition to read, "You shall not knowingly possess or consume alcohol or illegal controlled substances or knowingly go to places where alcohol is the primary item of sale."

## IV. DISPOSITION

The probation condition providing, "You shall not possess or consume alcohol or illegal controlled substances or knowingly go to places where alcohol is the primary item of sale" is modified to read as follows:

"You shall not knowingly possess or consume alcohol or illegal controlled substances or knowingly go to places where alcohol is the primary item of sale."

As modified, the judgment is affirmed.

8

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:



_____
MIHARA, J.



_____
MÁRQUEZ, J.